[No. B039897. Second Dist., Div. Two. Sept. 28, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY DANA TROTMAN, Defendant and Appellant.

COUNSEL

Gilbert C. Caton for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, John R. Gorey and Ivy K. Kessel, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**COMPTON, Acting P. J.**—Defendant Gary Dana Trotman was charged in an information with gross vehicular manslaughter while intoxicated

(Pen. Code, § 191.5), driving under the influence of alcohol so as to cause bodily injury to another (Veh. Code, § 23153, subd. (a)), and causing injury while driving with a blood alcohol level of .10 or above (Veh. Code, § 23153, subd. (b)). The information further alleged that he had suffered two prior convictions for driving under the influence within seven years of the commission of the instant offenses, and that he had caused bodily injury to more than one victim within the meaning of Vehicle Code section 23182. Following the denial of his motions to suppress evidence (Pen. Code, 1538.5, subd. (a)) and to set aside the information (Pen. Code, § 995), defendant pleaded no contest to simple vehicular manslaughter in violation of Penal Code section 192, subdivision (c)(3). The remaining counts were thereafter dismissed and defendant was sentenced to state prison for a term of two years. This appeal follows. We affirm.

■■■ The single issue we must consider in this case concerns the warrantless seizure of a blood sample from an apparently intoxicated, but conscious, driver without his consent and without a prior formal arrest. Relying upon *People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757 [100 Cal.Rptr. 281, 493 P.2d 1145], defendant moved to suppress the chemical analysis of the sample on the ground that a lawful arrest is a necessary condition precedent to a valid blood test. The trial court found, however, that the *Hawkins* arrest requirement was excused by exigent circumstances and that, as a result, there was no constitutional impediment to admitting the results of the test. (See *Carrington* v. *Superior Court* (1973) 31 Cal.App.3d 635, 642 [107 Cal.Rptr. 546].) Although we agree with that analysis under the facts presented here, we conclude that the Truth-in-Evidence provision of Proposition 8, which added article I, section 28, subdivision (d) to the California Constitution, abrogated the *Hawkins* rule in the first instance, making it unnecessary for the trial court to reach the issue of exigent circumstances.

The facts relevant to our determination are undisputed. On the afternoon of November 8, 1987, defendant was involved in a two-vehicle traffic collision on a stretch of the Sierra Highway in Antelope Valley which resulted in one fatality[1] and injured numerous others. Shortly thereafter, Los Angeles Deputy Sheriff Michael Rice arrived at the scene to find paramedics, fire and ambulance personnel, and two extensively damaged automobiles. After examining both vehicles, their relative positions, and skid marks, he concluded that the accident was the result of a head-on collision. Further investigation established that defendant's car had skidded approximately 70 feet from the southbound lane to the point of impact on the opposite side of the highway. Defendant and his female passenger were pinned inside their

---

[1] The victim, Jose Urenda, died several hours after the collision.

vehicle, both unable to extricate themselves from the wreckage without the help of emergency personnel. As the paramedics and firemen worked to free them, Rice leaned into the car and asked defendant, who was seated behind the wheel, if he knew what had caused the collision. Appearing disoriented and seriously injured, defendant replied that he did not know and then lapsed into a state of semiconsciousness. After noticing an odor of alcohol on defendant's breath, Rice made no further inquiries. Following his removal from the car, defendant was transported by ambulance to a local hospital.

Deputy Rice remained at the scene giving aid to the other injured victims, preserving evidence, and directing an unusually heavy flow of traffic from a nearby air show at Edwards Air Force Base. Anxious to determine whether defendant or the driver of the other vehicle was intoxicated at the time of the accident, Rice directed a fellow officer, Deputy Bluff, to obtain blood samples for chemical analysis from both men. Although defendant was alert, awake, and oriented when contacted at the hospital, the deputy requested a nurse to perform the test without either arresting defendant or securing his consent. The sample, withdrawn only a short time before defendant was scheduled for surgery, revealed a blood-alcohol level of .11 percent.[2] Defendant subsequently was charged with manslaughter.

On this appeal, as in the trial court, defendant relies primarily on *People v. Superior Court (Hawkins), supra,* 6 Cal.3d 757, in support of his contention that the blood sample was obtained in violation of his Fourth Amendment rights. In that case, our Supreme Court held that a blood sample may not be taken from a conscious, injured motorist without his consent unless (1) the removal is done in a reasonable medically approved manner, (2) it is incident to the defendant's arrest, and (3) it is based on a reasonable belief that the defendant is under the influence. As in the case at bench, the blood sample in *Hawkins* was withdrawn from the defendant without a warrant while he was in a hospital emergency room awaiting treatment for injuries sustained in an automobile accident. The defendant had not been arrested at the time and a purported consent given by him was found, as a matter of fact, not to have been freely and voluntarily given.

Interpreting *Schmerber* v. *California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], our Supreme Court emphasized that ". . . *Schmerber's* approval of the compulsory seizure of blood is clearly grounded on the premise that it is incidental to a lawful arrest." (*Hawkins, supra,* 6 Cal.3d at p. 761.) Continuing on the same theme, the court quoted from its own

---

[2] The prosecution and defense stipulated at the preliminary hearing that a separate analysis of the sample by defendant's experts indicated a blood-alcohol level of .10 percent.

Either blood-alcohol level was sufficient to establish that defendant was under the influence of alcohol at the time of the accident.

decision in *People* v. *Duroncelay* (1957) 48 Cal.2d 766, 772 [312 P.2d 690], stating that there ". . . we made it perfectly clear that the seizure of the blood sample could only be justified as 'incident to the lawful arrest of one who is reasonably believed to have [driven under the influence].' " (*Hawkins, supra,* 6 Cal.3d at p. 762.) The court then disapproved five earlier cases holding that blood could be withdrawn if there existed probable cause even though there had been no actual, formal arrest.

Less than one year later, the Court of Appeal in *Carrington* v. *Superior Court, supra,* 31 Cal.App.3d 635, found an exception to the *Hawkins* arrest requirement based on "the exigencies of the situation." (*Id.* at p. 642.) The defendant in that case was unconscious and "smelled of alcohol" when the officer arrived at the scene of a fatal traffic collision. Leaving the defendant to the care of other emergency personnel, the officer turned his attention to other "humanitarian" matters, including traffic control and accident investigation. In the meantime, the defendant, who remained unconscious, was transported to a local hospital where a sample of his blood was subsequently withdrawn at the officer's request. He was arrested some six weeks later for vehicular manslaughter and felony driving under the influence.

While acknowledging that *Hawkins* mandated a formal arrest prior to the warrantless seizure of a blood sample, the court reasoned that compliance could be excused by "exigent circumstances" such as a medical emergency. In so holding, the court noted that because the defendant had been seriously injured in the accident, it would have been inhumane for the officer to transport him to jail or to otherwise delay his hospitalization by attempting to secure a warrant. "Because of his humanitarian activities, the officer had made it impossible to either secure a search warrant or to arrest the defendant. Because he was unconscious the defendant could not give consent. An emergency situation existed. Under the circumstances of this case, the lack of a formal arrest was excused on the emergency, necessity or 'exigencies of the situation' doctrine." (31 Cal.App.3d at p. 642.)[3]

Although we are convinced, as was the trial court, that the instant case falls squarely within the exigent circumstances doctrine relied upon in *Carrington,*[4] we find it unnecessary to justify the seizure of the blood sample on that ground.

---

[3] The Court recognized that under the *Hawkins* rule, "[t]he rapid dissipation of alcohol in the blood does not, by itself, create an emergency situation sufficient to excuse an arrest. [Citation.]" (*Id.* at pp. 641-642.)

[4] Here, as in *Carrington,* defendant's injuries made it imperative that he be transported to the hospital without delay. At the same time, the deputy was forced to remain at the scene of the accident, giving aid to the other victims, preserving evidence, and directing traffic. Viewed in this light, it was simply impracticable, if not impossible, for the deputy to take defendant into custody for the purpose of securing a search warrant or transporting him to a

 *Hawkins* was decided by our Supreme Court in 1972, a decade before the passage of Proposition 8 and the consequent amendment to the California Constitution (art. I, § 28, subd. (d)) declaring that, with certain exceptions, "relevant evidence shall not be excluded in any criminal proceeding." The effect of that provision was, inter alia, to prohibit application of the "exclusionary rule" to evidence gathered in violation of the state Constitution's search and seizure clause (art. I, § 13) unless exclusion is compelled by federal constitutional law. (*In re Lance W.* (1985) 37 Cal.3d 873, 888-890 [210 Cal.Rptr. 631, 694 P.2d 744].) The enactment of article I, section 28, subdivision (d) thus limited the ability of the courts of this state to create nonstatutory rules for the exclusion of unlawfully seized evidence if those rules afford greater protection to a criminal defendant than does the Fourth Amendment.

 In view of the mandate of article I, section 28, subdivision (d), the legality of the seizure in the instant case must be resolved under federal and not state law. The rule articulated in *Hawkins,* though purportedly based on an interpretation of *Schmerber* v. *California, supra,* 384 U.S. 757, is considerably more restrictive than that imposed under federal constitutional authority. We therefore decline to follow *Hawkins* and hold that a formal arrest of a defendant suspected of driving under the influence is not a constitutional prerequisite to the warrantless, nonconsensual seizure of a blood sample for chemical analysis. As we shall explain, the Fourth Amendment's prohibition against unreasonable searches and seizures requires only that there be probable cause to place the defendant under arrest before the sample is withdrawn in a medically approved manner.

In *Schmerber,* as in this case, the defendant was involved in a traffic collision. The patrolman, arriving at the scene shortly after the accident, smelled liquor on defendant's breath and noticed that his eyes appeared to be bloodshot. The defendant was transported to a hospital where he was treated for his injuries and arrested for driving under the influence. Sometime after the arrest, a sample of defendant's blood was withdrawn by a physician at the officer's request. The officer possessed no search warrant, nor did the defendant consent. He objected to the admission in evidence of the blood-alcohol test results at trial, asserting that they were the product of

---

jail facility. His safety, indeed his life, depended on swift action unhampered by the mechanics of a formal arrest.

Defendant maintains, however, that the facts of this case are distinguishable from *Carrington* because he was not unconscious at the time the blood sample was withdrawn. Contrary to the argument advanced here, *Carrington* makes it clear that a suspect's unconsciousness is only one factor that may be considered in determining the existence of exigent circumstances sufficient to excuse the *Hawkins* arrest requirement. No less an emergency existed simply because the defendant in our case regained consciousness prior to the withdrawal of the blood specimen.

an unconstitutional search and seizure. The United States Supreme Court rejected the contention and held the blood test results to be admissible, stating that "[g]iven these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest." (384 U.S. at p. 771 [16 L.Ed.2d at p. 920].)

As previously noted, *Hawkins* construed the foregoing language as requiring an officer to engage in the formalistic ritual of making a lawful arrest prior to securing a blood sample from a defendant without his consent and without a warrant. That conclusion appears questionable given that the validity of the arrest was not even before the court in *Schmerber*. Although the decision admittedly referred to the search as "incident to petitioner's arrest," the holding did not turn on the existence of a valid prior arrest. To the contrary, the court relied almost exclusively on the exigency created by the evanescent nature of blood alcohol and the danger that important evidence would disappear without an immediate search. In so concluding, the court emphasized that the taking of the sample was reasonable where "there was plainly probable cause" (384 U.S. at p. 768 [16 L.Ed.2d at p. 918]) to arrest and charge the defendant with driving under the influence and to suggest "the required relevance and likely success of a test of [the defendant's] blood for alcohol." (*Id.* at p. 770 [16 L.Ed.2d at p. 919].) While recognizing that law enforcement officers have the authority to search a lawfully arrested suspect for evidence or concealed weapons, the court rejected the notion that the mere fact of arrest could ever justify the seizure of a blood sample. (*Id.* at pp. 769-770 [16 L.Ed.2d at p. 919].)

The *Hawkins* rationale was further undermined by the decision in *Cupp* v. *Murphy* (1973) 412 U.S. 291 [36 L.Ed.2d 900, 93 S.Ct. 2000], where the court found that exigent circumstances could justify a search based on probable cause even in the absence of a prior formal arrest when imminent destruction of evidence is likely and the intrusion is minimal. In that case, the defendant voluntarily appeared at a police station for questioning in connection with the strangulation death of his wife. Shortly thereafter, one of the investigating officers noticed a dark spot resembling dried blood on the defendant's finger. The officer, remembering that the victim had lacerations on her neck and knowing that evidence of strangulation frequently can be found under the perpetrator's fingernails, requested a sample of scrapings from defendant's nails. When he refused, the officer proceeded to take the sample without a warrant and in spite of the defendant's protestations. The scrapings were later found to contain traces of the victim's skin and blood, and fabric from her nightgown. The evidence was admitted at the defendant's trial, and he subsequently was convicted of murder.

On these facts, the United States Supreme Court upheld the search because of the existence of probable cause, the very limited intrusion

undertaken incident to the station house detention, and the ready destructibility of the evidence. The court noted that, although no formal arrest had been made, there was at the time of the search probable cause to believe that the defendant had committed the murder. The court reasoned that since probable cause existed, it was proper to analogize the fingernail scrapings to a search incident to a lawful arrest under the doctrine of *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. Recognizing that *Chimel* limited the scope of a search incident to an arrest to an extent which is "commensurate with the rationale that excepts the search from the warrant requirement" (*Cupp* v. *Murphy, supra,* 412 U.S. at p. 295 [36 L.Ed.2d at p. 906]), the court pointed to the ease with which the defendant could have destroyed the physical evidence unless it was immediately seized. The exigency created by the destructibility of the evidence, coupled with the defendant's motivation to obliterate any incriminating traces of the crime, justified the officer's warrantless search. The court concluded: "The rationale of *Chimel,* in these circumstances, justified the police in subjecting [the defendant] to the very limited search necessary to preserve the highly evanescent evidence they found under his fingernails." (*Id.* at p. 296 [36 L.Ed.2d at p. 906].)

Based upon the foregoing, we are convinced that the rule established in *Hawkins* is contrary to the principles articulated by the United States Supreme Court in both *Schmerber* and *Cupp.* Under federal law, it is the evanescent nature of the evidence sought, not the existence or absence of a formal arrest, that constitutionally justifies the warrantless, nonconsensual seizure of a blood sample from a defendant suspected of committing an alcohol-related offense. Since we are compelled by section 28, subdivision (d) to follow federal constitutional authority (*In re Lance W., supra,* 37 Cal.3d 873, 887),[5] we must conclude that a formal arrest is not a precondition to the warrantless extraction of blood so long as probable cause exists to believe that the defendant was driving under the influence and that an analysis of the sample will yield evidence of that crime.[6] The rationale of

---

[5]It seems to us that Proposition 8 was enacted by the voters of this state for the very purpose, among others, of abrogating cases, such as *Hawkins,* which had elevated the procedural rights of the criminal defendant above the level required by the federal Constitution as interpreted by the United States Supreme Court. (Cf. *People* v. *May* (1988) 44 Cal.3d 309, 318 [243 Cal.Rptr. 369, 748 P.2d 307].)

[6]We note in passing that California's implied consent law (Veh. Code, § 13353) does not require a different result. The courts of this state have consistently held that "the desirability of obtaining blood samples in a noncoercive manner by one of the tests provided for in section 13353 may not be equated with constitutionality" (*People* v. *Ryan* (1981) 116 Cal.App.3d 168, 182 [171 Cal.Rptr. 854]) and that the results of chemical analysis performed on a blood sample forcibly removed are admissible in a subsequent criminal prosecution. (*Ibid.*) As observed in *People* v. *Puccinelli* (1976) 63 Cal.App.3d 742, 746 [135 Cal.Rptr. 534], "It is also clear that the right to obtain and utilize such chemical analyses under the authority of *Schmerber* has not been eliminated by the enactment of section 13353."

both *Schmerber* and *Cupp* makes it clear that probable cause to arrest a defendant is the constitutional equivalent of an actual arrest for the limited purpose of determining blood alcohol content.[7] In other words, a search in this situation is permissible "whenever the greater intrusion of arrest and search would have been lawful." (2 LaFave, Search and Seizure (2d. 1987) § 5.4(b), ch. 5, p. 524, italics omitted.)[8]

In our case, we think it clear that Deputy Rice had sufficient probable cause both to arrest defendant and to believe that a test of a sample of his blood would reveal alcohol.[9] We also find the existence of exigent circumstances which made it impractical to obtain a search warrant prior to the extraction of the sample. It is beyond question that with the passage of time, normal physiological functions eliminate the alcohol content of an inebriate's blood. (See *Schmerber* v. *California, supra,* 384 U.S. 757, 770 [16 L.Ed.2d at p. 919].) At the time defendant's blood was withdrawn, he was being readied for emergency surgery and considerable time had elapsed since the collision. Had immediate action not been taken, the blood-alcohol evidence would have been lost. The exigent circumstances in this case are

---

[7] Numerous other jurisdictions which have considered the issue have reached a similar result. (See, e.g., *State* v. *Cocio* (1985) 147 Ariz. 277 [709 P.2d 1336]; *People* v. *Milhollin* (Colo. 1988) 751 P.2d 43; *State* v. *Aguirre* (Minn. 1980) 295 N.W.2d 79; *State* v. *Milligan* (1988) 304 Or. 659 [748 P.2d 130].)

[8] Our conclusion is supported by Professor LaFave in his treatise on search and seizure, where he states: "[T]he better view is to the contrary, namely, that a 'warrantless search is proper if the officer had probable cause to believe that a crime had been committed and probable cause to believe that evidence of the crime in question will be found' and that 'an immediate, warrantless search is necessary in order to . . . prevent the destruction or loss of evidence.' Indeed, the case for permitting a taking of the blood sample upon probable cause that the defendant is intoxicated without first arresting him is, if anything, stronger than the case for the searches conducted in *Cupp* and *Franklin* [*Franklin* v. *State* (1973) 308 A.2d 752]. In the blood sample case, as opposed to those cases, there is no room whatsoever for the argument that the lack of a formal arrest may decrease somewhat the chances that the evidence will be destroyed, for the 'evanescent' character of the evidence is inherent in its nature and does not depend upon any motive of the defendant to destroy it. That is, the need for the blood sample arises out of the fact, as stated in *Schmerber* v. *California,* 'that the percentage of alcohol in the blood begins to diminish shortly after drinking stops,' an emergency which is in no way affected by whether or not the defendant has been formally arrested. *It is the height of formalism, to say the least, to suggest that a warrantless search on probable cause in order to meet this emergency is reasonable only if the police first declare the hospitalized defendant under arrest.* . . . The claim that the contrary position 'provides some measure of assurance that probable cause is based upon considerations independent of the blood-alcohol test results' is untenable, as the need for a court to determine that probable cause existed prior to the test is present under either rule." (2 LaFave, Search and Seizure, *supra,* § 5.4(b), at pp. 522-523, fns. omitted, italics added.)

[9] At the time he ordered his fellow officer to obtain a blood sample from defendant, Deputy Rice knew the following facts: (1) A traffic collision had occurred in which several persons had been severely injured; (2) the vehicle in which defendant was trapped behind the wheel was on the wrong side of the highway at the time of the accident; (3) the damage to the vehicles and the position of the skid marks indicated that defendant's driving was the likely cause of the collision; and (4) defendant's breath smelled of alcohol.

even more compelling than those found in *Cupp* since alcohol in a suspect's blood is certain to disappear while the physical evidence on the defendant in *Cupp* was only very likely to disappear while a search warrant was obtained. Finally, the intrusion was minimal (see *Schmerber, supra,* 384 U.S. at p. 771 [16 L.Ed.2d at p. 921]) and the test was performed in a reasonable manner pursuant to accepted hospital procedure.

In light of the foregoing, we are convinced that the requirements set forth in *Schmerber* and *Cupp* have been fulfilled. The fact that the search preceded the arrest rather than vice versa is not controlling under the facts of this case. Defendant's constitutional rights were not violated, and the trial court properly refused to suppress the results of the blood-alcohol test.

The judgment is affirmed.

Gates, J., and Fukuto, J., concurred.