[No. A044905. First Dist., Div. Four. Oct. 24, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
CARLOS GEORGE DELTORO, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Aileen Bunney and David Lew, Deputy Attorneys General, for Plaintiff and Appellant.

Gary V. Crooks for Defendant and Respondent.

OPINION

**ANDERSON, P. J.**—The People appeal from an order dismissing an information following the granting of defendant's motion to suppress evidence. We reverse.

## I. PROCEDURAL BACKGROUND

The district attorney filed an information in the superior court charging defendant Carlos George Deltoro (respondent) with driving under the influence of alcohol resulting in injury to another in violation of Vehicle Code section 23153 (count I), and driving with 0.10 percent or more of alcohol in his blood resulting in injury to another in violation of Vehicle Code section 23153, subdivision (b) (count II). The information also alleged that respondent had been convicted of a violation of Vehicle Code section 23152, subdivision (a), within seven years from the commission of the charged offense in violation of Vehicle Code section 23185.

Pursuant to Penal Code[1] section 1538.5, respondent filed a motion to suppress the results of a blood sample taken from him. The court granted the motion and, five days later, dismissed the matter pursuant to section 1385.5. The People appealed pursuant to section 1238, subdivision (a)(7).

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

## II. FACTS

On August 6, 1988, California Highway Patrol Officer Michael Jones received a dispatch to investigate an automobile accident on Redwood Road in Napa County. He was informed that the two suspects, suffering major injuries, were in the emergency room in the Queen of the Valley Hospital.

After arriving at the hospital, Officer Jones first talked to Bingham, who had been a passenger in the front seat of the accident vehicle. When asked what happened, Bingham said that respondent was driving about 50 miles per hour when they came upon a 15-mile per hour curve; he lost control of the car and it went off the road and down into a creek bed. Bingham also related that he had suffered a broken back.

Officer Jones then went to a different room to visit the respondent. When he stepped into the room he smelled an odor of alcoholic beverage. At that time respondent was lying on his back on a gurney and was being prepared by a doctor for stitches. He had major facial lacerations with his nose split in half down to his cheek bones; his forehead had about a one-half inch deep puncture. He also had one swollen eye and the other was traumatized. The examining doctor indicated to Officer Jones that respondent would have to stay in the hospital for up to a couple of weeks. Officer Jones then asked respondent what had happened. Respondent said that he had been operating a motor vehicle and that he had failed to negotiate a curve. Respondent appeared to understand the questions Officer Jones asked and the answers he gave. During the conversation Officer Jones also smelled an odor of an alcoholic beverage on respondent's breath.

Based on this information, Officer Jones formed the opinion that respondent had been driving under the influence of alcohol. He advised respondent that he had violated the driving under the influence of alcohol law, and that he would have to submit to a chemical test. He informed respondent that the only test that could be offered was a blood test, and that he would have to take a blood test. Respondent agreed to take the test, and Officer Jones called for a blood technician to come in and draw a sample of blood. Neither before nor at the time the test was performed, did Officer Jones place respondent under arrest.

At the hearing on the motion to suppress, the trial court found that Officer Jones failed to notify respondent of his intention to make an arrest prior to the blood test, so the test could not be done without respondent's consent. The court further found that there was no voluntary consent. Therefore, the court granted respondent's motion to suppress and dismissed the information on its own motion.

## III. DISCUSSION

On appeal the People argue that the order granting respondent's motion to suppress should be reversed because: (1) the taking of respondent's blood was incident to his arrest, and (2) respondent had voluntarily consented to its taking. Respondent claims that there was neither a lawful arrest, nor a voluntary consent, and he also raises the issue that the order of dismissal is not appealable. We find that the order of dismissal is appealable, that the order granting the motion to suppress was erroneous, and that the order of dismissal should be reversed.

### A. *The Order of Dismissal Is Appealable*

Respondent claims that the court's order of dismissal was made in response to the request of the prosecutor and, thus, is not appealable. We disagree.

■ Under section 1385, a trial court may dismiss an action either upon its own motion or upon motion of the prosecution and in furtherance of justice. The People may appeal the dismissal order under section 1238, subdivision (a)(7), only when it was made upon motion of the court. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 721 [195 Cal.Rptr. 503, 669 P.2d 1278].) But the trial court has broad discretion to dismiss a case under section 1385. (*People* v. *Superior Court* (*Howard*) (1968) 69 Cal.2d 491, 504 [72 Cal.Rptr. 330, 446 P.2d 138].) In *People* v. *Dewberry* (1974) 40 Cal.App.3d 175 [114 Cal.Rptr. 815], after granting the defendant's motion to suppress an in-court identification, the court dismissed the case because the People had declared their inability to proceed. The Court of Appeal held that such dismissal was adequate to notify it of the reason for dismissal, and that this reason justified the dismissal because "there would be no reason to further detain or harass the defendant here by insisting the case continue in some form of vacuum when the People are unable to continue." (*Id.,* at p. 185.)

Here, the record clearly reveals that it was the intention of the court to preserve the People's right to appeal. The court started its discussion with counsel by saying: "Suppose I wanted the People to have the right of appeal from th[e] ruling, that I thought that that . . . was the only fair way of leaving my ruling? How would I do that?" Thereupon, in order to preserve the right to appeal for the People, the court dismissed the case "on its own motion," giving the following reason: "with the suppression of the evidence, there isn't a reasonable possibility of obtaining a conviction . . . ." Just as in *People* v. *Dewberry,* the court stated its reason for the dismissal and such pronouncement conclusively demonstrates that the dismissal order was

made upon the court's own motion and not upon the prosecution's motion. Therefore, the order is appealable.

### B. *The Trial Court's Suppression of Respondent's Blood Sample Was Erroneous*

Respondent contends that since he was not first placed under arrest the taking was not incident to a lawful arrest and the blood sample was therefore properly suppressed under *People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757 [100 Cal.Rptr. 281, 493 P.2d 1145]. Relying on *Schmerber* v. *California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], the California Supreme Court in *Hawkins,* held that the taking of a person's blood is valid if the taking "is done in a medically approved manner, *is incident to a lawful arrest,* and is based upon the reasonable belief that the person is intoxicated. [Citations.]" *(People* v. *Superior Court (Hawkins), supra,* 6 Cal.3d at p. 761, italics added.)

We find that *Hawkins* has been abrogated by Proposition 8 (Cal. Const., art. I, § 28, subd. (d)), because its holding is contrary to the federal rule as enunciated by the United States Supreme Court in *Cupp* v. *Murphy* (1973) 412 U.S. 291 [36 L.Ed.2d 900, 93 S.Ct. 2000]. We further find that since the taking of the blood sample in this case complies with *Cupp* v. *Murphy,* the order granting the motion to suppress the blood sample should be reversed.

A year after *Hawkins* was decided, the United States Supreme Court in *Cupp* v. *Murphy, supra,* 412 U.S. 291, upheld the validity of the taking of defendant's fingernail scrapings without first requiring that the defendant be placed under arrest. In *Cupp,* the defendant, following the strangulation murder of his wife, had voluntarily gone to a police station where the police noticed a dark spot on his finger. Suspecting that the spot might be dried blood and knowing that evidence of strangulation is often found under the assailant's fingernails, the police officer took scrapings from defendant's fingernails after defendant's refusal to consent. (Those scrapings were later linked to the wife's blood, skin and nightgown.) Defendant was conscious when the officer took the sample; however, he was not arrested until a month later. After considering the existence of probable cause, the very limited intrusion and the ready destructibility of the evidence, the court found that such taking was valid under the Fourth and Fourteenth Amendments. *(Id.* at p. 296 [36 L.Ed.2d at p. 906].)

The rule in *Cupp* is clearly applicable to the extraction of blood cases, because in both situations police conduct intrudes into a person's body to seize evanescent evidence. In *Schmerber* v. *California, supra,* 384 U.S. at page 771 [16 L.Ed.2d at page 920], the United States Supreme Court

recognized that the intrusion of a person's body for a blood sample was minor. There is no distinguishable difference of intrusion in these two situations. The court in *Schmerber* also found that if the police did not obtain the blood sample in time, the evidence would be evanescent forever, because "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." (*Id.*, at p. 770 [16 L.Ed.2d at p. 920].) According to the above analysis, after *Cupp* v. *Murphy,* the taking of a person's blood is valid, if there is probable cause to believe that the person committed driving while under the influence of alcohol even though he was not first formally arrested therefor. Under these circumstances, unlike the California rule of *Hawkins,* under federal law there is no need to put a conscious defendant under arrest before extracting his blood. Nevertheless, California courts had been bound by the more stringent rule set forth in *Hawkins* until the adoption of Proposition 8 in 1982.

■ Proposition 8 added section 28, subdivision (d), to article I of the California Constitution: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding . . . . Nothing in this section shall affect any existing statutory rule of evidence relating to privilege . . . ." This subdivision has abrogated a defendant's right to object to (and successfully move to suppress) evidence seized in violation of the California, but not the federal, Constitution. In *In re Lance W.* (1985) 37 Cal.3d 873, 884 [210 Cal.Rptr. 631, 694 P.2d 744], the California Supreme Court held that "section 28(d) now mandates admission of unlawfully seized evidence unless exclusion is required by the Fourth Amendment exclusionary rule as defined by the United States Supreme Court." (See also *People* v. *Bencomo* (1985) 171 Cal.App.3d 1005, 1014 [217 Cal.Rptr. 826].) "What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*In re Lance W., supra,* 37 Cal.3d at pp. 886-887, original italics.) Therefore, "California decisional law which would exclude relevant evidence under our state Constitution is inapplicable here; only that evidence which was illegally obtained under *federal* constitutional standards must now be suppressed in California courts. [Citation.]" (*People* v. *Gutierrez* (1984) 163 Cal.App.3d 332, 334 [209 Cal.Rptr. 376], original italics; see also *People* v. *Luevano* (1985) 167 Cal.App.3d 1123, 1128 [213 Cal.Rptr. 764].) ■ "[T]he purpose of section 28(d) was to eliminate independent state grounds for exclusion of illegally obtained evidence, leaving the federal Constitution as interpreted by controlling federal decisions as the sole basis for exclusion. [Citation.]" (*People* v. *Daan* (1984) 161 Cal.App.3d 22, 26 [207 Cal.Rptr. 228];

see also *People* v. *Truer* (1985) 168 Cal.App.3d 437, 441 [214 Cal.Rptr. 869]; *People* v. *Helmquist* (1984) 161 Cal.App.3d 609, 614 [207 Cal.Rptr. 718].)

Our Supreme Court has also applied this federal supremacy rule to Fifth Amendment cases, abrogating greater protections to California defendants under California law. (*People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307].) In *May* the prosecution sought in rebuttal to introduce defendant's statements to the police—statements which had been elicited after invocation of defendant's right to have an attorney present in violation of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. California law required that such statements be excluded under *People* v. *Disbrow* (1976) 16 Cal.3d 101 [127 Cal.Rptr. 360, 545 P.2d 272] despite the earlier United States Supreme Court holding of *Harris* v. *New York* (1971) 401 U.S. 222, 225-226 [28 L.Ed.2d 1, 4-5, 91 S.Ct. 643], to the contrary. In *Harris,* the United States Supreme Court held that such statements are admissible for purposes of impeaching a testifying defendant whose trial testimony was inconsistent with the earlier statements. In *May* the California Supreme Court held that its earlier *Disbrow* holding was based on independent state grounds under California Constitution, article I, section 15, and did not survive the 1982 amendment of the California Constitution by Proposition 8, which added section 28, subdivision (d). (*People* v. *May, supra,* 44 Cal.3d at p. 315.) The court determined that the *Disbrow* rule was a remedial device, not a substantive right and, thus, did not fall within the exception to section 28, subdivision (d), for "existing statutory rule[s] of evidence relating to privilege." (*Id.,* at p. 316.) The court also stated that Proposition 8 required the abrogation of the judicially declared rule for a constitutional violation based on police misconduct and also that, under that section, evidence must be excluded only if that result was required by the United States Constitution. (*Id.,* at p. 318.) Therefore, the court held that Proposition 8 abrogated the rule of *People* v. *Disbrow,* and that henceforth California courts were bound to follow the federal rule as enunciated in *Harris* v. *New York.*

This same analysis was most recently applied by our Supreme Court in deciding what standard of proof governs the determination of the voluntariness of a defendant's confession. In *People* v. *Markham* (1989) 49 Cal.3d 63, 65 [260 Cal.Rptr. 273, 775 P.2d 1042], the court held that at trial the People only had to prove the voluntariness of a defendant's confession by a preponderance of evidence as required by federal law. (*Lego* v. *Twomey* (1972) 404 U.S. 477, 489 [30 L.Ed.2d 618, 627, 92 S.Ct. 619].) The former California rule announced in *People* v. *Jimenez* (1978) 21 Cal.3d 595, 605 [147 Cal.Rptr. 172, 580 P.2d 672], requiring the People to prove a confession voluntary beyond a reasonable doubt had been abrogated by

Proposition 8, reasoned the court. It explained that the former standard of proof of voluntariness required by *Jimenez* was a judicially created standard and was more stringent than that mandated by the federal Constitution; such a procedural rule did not survive Proposition 8.

■ For cases involving extraction of blood, the exclusionary rule of *Hawkins* is a nonstatutory rule created by the California state court, and it was intended to exclude evidence seized in violation of the California, not federal, Constitution. Under *In re Lance W.,* the *Hawkins* rule has been abrogated by Proposition 8, and we are bound to follow federal constitutional standards to determine whether to exclude illegally seized evidence. That federal constitutional standard is found in *Cupp* v. *Murphy.* Under *Cupp* v. *Murphy,* if there is probable cause to believe that a person committed driving under the influence of alcohol, the taking of such person's blood is valid regardless of whether that person is first formally placed under arrest.

Our conclusion that *Hawkins* is no longer the law of California is further buttressed by the recent well-reasoned opinion by the Second District in *People* v. *Trotman, ante,* p. 430 [262 Cal.Rptr. 640]. In *Trotman,* the defendant was involved in a two-vehicle collision. The deputy sheriff directed a nurse to perform a blood test on the defendant, while he was alert and awake, without either arresting him or securing his consent. The court found that "the rule established in *Hawkins* is contrary to the principles articulated by the United States Supreme Court in both *Schmerber* and *Cupp.* . . ." (*Id.,* at p. 437.) Moreover, under Proposition 8, California courts are bound to follow the federal exclusionary rule of evidence.[2] Therefore, "a formal arrest [as required by *Hawkins*] is not a precondition to the warrantless extraction of blood so long as probable cause exists to believe that the defendant was driving under the influence and that an analysis of the sample will yield evidence of that crime." (*Ibid.,* fn. omitted.)

Here respondent's passenger had indicated, and he had admitted, that he had been the driver of the vehicle involved in the accident. Officer Jones smelled an odor of an alcoholic beverage when he stepped into the emergency room where respondent lay, and he also smelled it on respondent's

---

[2] The trial court in *Trotman* had found that the *Hawkins* arrest requirement was excused by exigent circumstances and then denied defendant's motion to suppress evidence. On appeal the court stated that "[a]lthough we are convinced, as was the trial court, that the instant case falls squarely within the exigent circumstances doctrine relied upon in *Carrington* [v. *Superior Court* (1973) 31 Cal.App.3d 635 (107 Cal.Rptr. 546)], we find it unnecessary to justify the seizure of the blood sample on that ground." (*Id.,* at p. 434, fn. omitted.) The court then distinguished *Hawkins* from *Schmerber* and *Cupp,* and discussed the effect of Proposition 8. In conclusion, the court found that both probable cause to arrest the defendant *and* exigent circumstances existed in the case.

breath when he talked to respondent. Based on these facts Officer Jones had probable cause to believe that respondent had committed the crime of driving under the influence of alcohol. Therefore, the taking of respondent's blood based on this probable cause was valid even though he was not formally arrested.

## IV. CONCLUSION

The record shows that the court dismissed the case upon its own motion; therefore, the order of dismissal is appealable. Under Proposition 8, California courts can only suppress evidence illegally seized under federal constitutional standards. The applicable federal standard for this case is found in *Cupp* v. *Murphy*. Applying *Cupp* v. *Murphy,* we find that the taking of respondent's blood was valid. Therefore, the court's order granting respondent's motion to suppress and the judgment of dismissal are reversed.

Channell, J., and Perley, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 17, 1990.