Filed 8/29/14  P. v. Benedict CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>   v.<br><br>KAREN ANN BENEDICT,<br><br>      Defendant and Appellant. | C074198<br><br>(Super. Ct. No. 12F04318) |

Defendant Karen Ann Benedict appeals her judgment following the trial court's denial of her motion to suppress evidence obtained as a result of a warrantless blood draw.  She contends the blood draw was illegal because it was not obtained incident to an arrest, it was obtained without probable cause, and there was no exigent circumstance to excuse not obtaining a warrant.  We reject defendant's contentions because (1) the lack of an actual arrest does not render the warrantless blood draw illegal if there was probable cause to believe defendant was driving under the influence of alcohol, (2) the record supports the officer's probable cause to arrest defendant for driving under the influence of alcohol at the time the blood sample was taken, and (3) the totality of the

1

circumstances supports a finding of exigent circumstance. Accordingly, we affirm the trial court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On March 9, 2012, at approximately 9:30 p.m., Officer Adam Gonzalez was dispatched pursuant to a reported "wrong-way driver" and "head-on collision" on Iron Point in Folsom. Iron Point has two lanes in each direction with a 12- to 14-foot-wide center divider with raised concrete curbs. When he arrived on scene, Gonzalez saw two vehicles -- a white Toyota Camry in a westbound lane facing south and a white Nissan Sentra on the center divider facing north with its front wheels in a westbound lane. Both vehicles had sustained major front end damage.

The three individuals from the Toyota Camry were lying on the sidewalk being attended to by witnesses. Gonzalez found defendant in the Nissan Sentra driver's seat with her head "slumped backwards," eyes closed, and "a significant amount of blood around her nose and mouth area." Defendant was initially unresponsive but she began to "come to" when Gonzalez attempted to obtain defendant's pulse after cutting the deployed curtain side air bag. When she began to respond, Gonzalez climbed into the seat behind defendant to support her neck and prevent her from moving. At the time, Gonzalez was unable to note any objective symptoms of intoxication because the air bag explosive and powders overpowered any other odor in the car, and Gonzalez was more focused on preventing and assessing defendant's injuries than on "check[ing] her pupils." But defendant admitted to Gonzalez she had been drinking "earlier."

Defendant was removed from the vehicle by other personnel and transported to the hospital. Gonzalez coordinated with officers at the accident scene and followed the ambulances (one each for defendant and for the driver and passengers of the Toyota Camry) to the University of California at Davis Medical Center. At the hospital, Gonzalez attempted to speak with defendant, but she was being treated, so he spoke with

the victims. The driver of the Toyota Camry reported he was driving westbound on Iron Point "when he saw headlights in his lane [and before] he could react, he was struck by another vehicle." The female passenger of the Toyota Camry confirmed defendant hit them head-on, traveling in the wrong direction.

Gonzalez spoke with defendant, who confirmed she had a "glass of wine" and had been heading home but "couldn't remember what had happened." Defendant appeared "to be out of it" and "was not fully cognizant," either because of the accident or intoxication -- Gonzalez was "not totally sure." Defendant appeared to be "noticeably impaired," though Gonzalez was unsure if that was due to the medication she was receiving, "alcohol, or the accident itself." Based on "all of the observations from multiple phone calls of a wrong way driver," his "training and experience," defendant's statement she had been "drinking wine earlier in the night and her actions," Gonzalez suspected she might have been driving under the influence and arranged for a nurse to perform a blood draw. The result of defendant's blood alcohol analysis, drawn at 10:48 p.m., was 0.18 percent.

Defendant was charged in count one with causing injury to another while driving in the wrong direction and under the influence of alcohol and a drug (Veh. Code, §§ 23153, subd. (a), 21651, subd. (b)) along with special allegations of causing great bodily injury to multiple victims (Veh. Code, § 23558; Pen. Code, § 12022.7, subd. (a)), and, in count two, with causing injury to another while driving with a blood alcohol level above the legal limit and above 0.15 percent (Veh. Code, §§ 23153, subd. (b), 23578), along with bodily injury special allegations (Pen. Code, § 12022.7, subd. (a)).

Defendant moved to suppress evidence of her blood analysis on the basis that the warrantless blood draw was illegal because Gonzalez lacked probable cause and there were not exigent circumstances. The trial court found there was probable cause to arrest

3

defendant "based on the defendant's seriously dangerous driving pattern including going the wrong way for a significant enough period of time that people were calling 911; the fact that she hit head-on a vehicle going the wrong way, [and] that she admitted that she had been drinking at the scene and admitted at least to consuming one glass of wine." The court also found an exigency in that defendant had already been admitted to the hospital and was receiving medical intervention, "including the introduction of intravenous fluid or other medical prescriptions" that might have affected the ability to obtain an accurate analysis of her blood alcohol level. Additionally, the court found the officer was acting "in good faith" based on the law in California at the time of the incident. Finally, the court concluded that "the delay necessary to obtain a warrant would . . . have caused the loss of relevant evidence." Therefore, the trial court denied defendant's suppression motion.

Defendant ultimately pled no contest to driving under the influence of alcohol and a drug, admitted one allegation of great bodily injury, and admitted two multiple victim enhancements. The court dismissed count two in the interest of justice and in view of the plea, and sentenced defendant to serve an aggregate term of 6 years 4 months: 16 months for count one, 3 years for the great bodily injury enhancement, and 2 one-year multiple victim enhancements.

DISCUSSION

Challenges to the admissibility of evidence obtained by a search or seizure are evaluated under federal constitutional standards. (*People v. Schmitz* (2012) 55 Cal.4th 909, 916.) The Fourth Amendment to the United States Constitution protects an individual's right to be secure in his or her person against unreasonable searches and seizures. (U.S. Const., 4th Amend.; *Terry v. Ohio* (1968) 392 U.S. 1, 8-9 [20 L.Ed.2d 898].) The central inquiry under the Fourth Amendment is the reasonableness under all of the circumstances of the particular governmental invasion of a defendant's

4

personal security. (*Terry, supra,* at p. 19.) A defendant may move to suppress evidence obtained as the result of an unreasonable search or seizure. (Pen. Code, § 1538.5, subd. (a)(1)(A).)

In reviewing the trial court's denial of a suppression motion, we consider the record in the light most favorable to the trial court's disposition and defer to the trial court's factual findings, if supported by substantial evidence. (*People v. Tully* (2012) 54 Cal.4th 952, 979.) Any conflicts in the evidence are resolved in favor of the trial court's order. (*People v. Limon* (1993) 17 Cal.App.4th 524, 529.) If " ' "the evidence is uncontradicted, we do not engage in a substantial evidence review, but face pure questions of law." [Citation.]' " (*Ibid.*) We exercise our independent judgment to determine whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment. (*Tully, supra*, at p. 979.) And we will affirm the trial court's ruling if correct on any theory of applicable law, even if for reasons different than those given by the trial court. (*People v. Evans* (2011) 200 Cal.App.4th 735, 742; *People v. Hua* (2008) 158 Cal.App.4th 1027, 1033.)

## A.

### *Lack of Arrest*

Defendant first contends her warrantless blood draw was illegal because *Schmerber v. California* (1966) 384 U.S. 757 [16 L.Ed.2d 908] (*Schmerber*) only applies incident to an arrest and defendant had not been formally arrested at the time of the blood draw. We disagree.

California courts have routinely applied *Schmerber, supra,* 834 U.S. 747 to permit a warrantless compulsory blood draw where "the procedure (1) is done in a reasonable medically approved manner,[1] (2) is incident to a lawful arrest, and (3) is based upon

---

[1]    Defendant does not dispute the procedure conformed to this requirement.

5

reasonable belief the arrestee is intoxicated.  [Citations.]"  (*People v. Ford* (1992) 4 Cal.App.4th 32, 35-36.)

Two California appellate court cases, *People v. Trotman* (1989) 214 Cal.App.3d 430 (*Trotman*) and *People v. Deltoro* (1989) 214 Cal.App.3d 1417 (*Deltoro*), have found that a blood sample may be obtained from a driver even in the absence of an actual arrest. (Accord, *United States v. Chapel* (9th Cir. 1995) 55 F.3d 1416, 1419.)  *Trotman* further holds that "[t]he rationale of both *Schmerber* and *Cupp* makes it clear that probable cause to arrest a defendant is the constitutional equivalent of an actual arrest for the limited purpose of determining blood alcohol content."  (*Trotman, supra*, at pp. 437-438.)  Thus, "a formal arrest is not a precondition to the warrantless extraction of blood so long as probable cause exists to believe that the defendant was driving under the influence and that an analysis of the sample will yield evidence of that crime."  (*Id.* at pp. 436-437.)

Therefore, the lack of an actual arrest does not render the warrantless blood draw illegal if there was probable cause to believe defendant was driving under the influence of alcohol.

## B.

### *Probable Cause*

Here, there was probable cause to support the warrantless blood draw of defendant.  The record shows Gonzalez was aware multiple calls had been placed to 911 reporting a driver traveling in the wrong direction on Iron Point, defendant had collided head-on with the victims while travelling in the wrong direction on Iron Point, defendant repeatedly admitted to drinking, and defendant appeared to be significantly impaired.  We conclude substantial evidence supported the trial court's finding Gonzalez had probable cause to arrest defendant for driving under the influence of alcohol at the time the blood sample was taken.

6

## C.

### *Exigent Circumstances*

Defendant further contends *Trotman*, *supra*, 214 Cal.App.3d 430 and *Deltoro, supra,* 214 Cal.App.3d 1417 should not be followed because their analyses depend in part on *Cupp v. Murphy* (1973) 412 U.S. 291 [36 L.Ed.2d 900] (*Cupp*), which holds that ready destruction of evidence, i.e., particle evidence under fingernails, is an exigent circumstance excusing the warrant requirement even in the absence of a formal arrest. *Trotman* relies on both *Schmerber, supra,* 384 U.S. 757 and *Cupp, supra,* 412 U.S. 291 for the proposition that "it is the evanescent nature of the evidence sought . . . that constitutionally justifies the warrantless, nonconsensual seizure of a blood sample from a defendant suspected of committing an alcohol-related offense." (*Trotman*, *supra*, 214 Cal.App.3d at p. 437.)

Defendant argues *Missouri v. McNeely* (2013) __ U.S. __ [133 S.Ct. 1552, 185 L.Ed.2d 696] (*McNeely*) distinguished the "easily disposable" blood and particle evidence under a defendant's fingernails in *Cupp, supra,* 412 U.S. 291 and blood alcohol content, which "naturally dissipates over time in a gradual and relatively predictable manner," and this distinction erodes the precedential viability of *Trotman supra*, 214 Cal.App.3d 430 and *Deltoro, supra,* 214 Cal.App.3d 1417. (*McNeely, supra*, at p. 1561.) *McNeely* held that the natural metabolic elimination of alcohol from the body does not per se constitute exigent circumstances justifying a warrantless nonconsensual blood draw. (*Id.* at p. 1568.) Rather, whether a warrantless blood draw is reasonable depends on the totality of the circumstances. (*Id.* at p. 1565-1566.) *McNeely* does not address whether a warrantless search is illegal in the absence of a formal arrest. (*Ibid.*) Therefore, the holdings of *Trotman*, *supra*, 214 Cal.App.3d 430 and *Deltoro, supra*, 214 Cal.App.3d 1417, at least for the reasons they are cited here, remain good law.

Additionally, even if *McNeely, supra,* 133 S.Ct. 1552 did have some import to the present case, it still would not render the denial of the suppression motion erroneous because the "totality of circumstances" justify defendant's warrantless blood draw. Here, the officer who ordered the warrantless blood draw was aware of defendant's repeated admissions, the multiple calls of a wrong-way driver, defendant's head-on collision while driving the wrong direction, the delay in assessing defendant's blood alcohol due to the medical attention defendant and victims were receiving, and the fact defendant had begun receiving intravenous fluids and medications as part of her medical treatment. Thus, the totality of circumstances justified defendant's warrantless blood draw.

Even if the warrantless blood draw was not justified, the denial of the suppression motion was still not erroneous. Binding appellate precedent, *Trotman*, *supra*, 214 Cal.App.3d 430 and *Deltoro, supra,* 214 Cal.App.3d 1417 specifically authorized Gonzalez's actions here because the totality of circumstances gave the officer probable cause to conduct the blood draw. Defendant identifies no California case that suggests her warrantless nonconsensual blood draw was not permissible based on the law prior to *McNeely, supra,* 185 L.Ed. 2d 696. California courts have regularly employed the "totality of circumstances" analysis to allow warrantless blood draws, even before *McNeely*, because it engaged in this analysis to determine whether probable cause exists. Thus, despite any change in the law *McNeely* may have effected, the police acted reasonably based on existing law at the time of the blood draw because, as shown above, there was probable cause to believe defendant was driving under the influence of alcohol. (See *Davis v. United States* (2011) __ U.S. __ [131 S.Ct. 2419, 2429, 180 L.Ed.2d 285].) Because Gonzalez acted reasonably, no "appreciable deterrence" would result from the application of the exclusionary rule in this case and the evidence related to the blood draw need not be suppressed. (*Id.* at pp. 2426-2427.) Consequently, the police conduct here, contrary to defendant's assertion otherwise, fell within the "good faith" exception

8

to the exclusionary rule.  (See *United States v. Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677].)

DISPOSITION

The judgment is affirmed.


      HOCH     , J.


We concur:


     BLEASE   , Acting P. J.


     HULL    , J.