[Crim. No. 4707.   Third Dist.   Nov. 26, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT E. FITE, JR., Defendant and Appellant.

Miller, Ford & O'Neal and James T. Ford for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

REGAN, J.—Defendant was found guilty by a court, sitting without a jury, of violating section 23101 of the Vehicle Code, i.e., felony drunk driving. He appeals from the judgment of conviction.

At the trial the case was submitted upon the following stipulation of facts: On May 5, 1967, defendant drove a motor

vehicle on a public highway. In so doing, defendant neglected a duty imposed upon him by law by failing to yield the right-of-way in violation of Vehicle Code section 21801. Such negligent procedure caused bodily injury to a person other than himself, to wit, Barbara Harder, a human being.

Upon being advised of the provisions of section 13353 of the Vehicle Code, the defendant refused to submit to a blood alcohol test or any test so prescribed in that section. A blood alcohol test was then taken without defendant's consent. The test, taken after defendant's refusal and without his consent, "was in no way brutal or shocking to the conscience and was incident to a lawful arrest." The blood alcohol test was administered in a medically approved manner.

Defendant's blood sample was tested and shown to be .21 alcoholic content. A blood alcohol level of .21 would be sufficient to place the defendant under the influence of alcohol for the purposes of driving a vehicle in violation of the statute. Defendant waived the necessity of a formal foundation for admission of the test results and stipulated that if the test should be found to be admissible "that would be the finding, without further cross-examination."

Defendant, did, however, oppose the introduction of the test results on the basis that the legislative intent behind section 13353 precluded the taking and introduction of a chemical test taken over an arrestee's objections. The results of the blood alcohol test were offered to prove that defendant was under the influence of intoxicating liquor, the only element of the offense not stipulated to.[1] Defendant's objection was overruled by the lower court and such ruling forms the basis of this appeal.

Vehicle Code, section 13353 (enacted Stats. 1966, First Ex. Sess., ch. 138, § 1, p. 635) provides, in pertinent part, as follows:

"(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to

---

[1]No evidence other than the test results was offered to prove intoxication. Although defendant refused to take any of the tests offered, and was found guilty of felony drunk driving, his license was not suspended.

believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath or urine.

"Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn his consent and such tests may be administered whether or not such person is told that his failure to submit to the test will result in the suspension of his privilege to operate a motor vehicle.

"(b) If any such person refuses the officer's request to submit to a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months. No such suspension shall become effective until 10 days after the giving of written notice thereof, as provided for in subdivision (c)."[2]

█ The question presented for this court's decision is whether the provisions of Vehicle Code section 13353 call for the exclusion of evidence obtained from chemical tests taken over and in spite of a person's refusal to submit, when the taking is in no way brutal or shocking to the conscience and is incident to a lawful arrest. In answering this question we will decide whether the Legislature, in enacting section 13353, intended to preempt the field of chemical sobriety tests by complete statutory regulation.

In *Bush* v. *Bright*, 264 Cal.App.2d 788, 792 [71 Cal. Rptr. 123], the court states: " 'Statutes must be given a reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers—one that is practical rather than technical, and that will lead to a wise policy rather than to mischief or absurdity.' (45 Cal.Jur.2d 625-626.) '[I]n construing a statute the courts may consider the consequences that might flow from a particular interpreta-

---

[2]The remainder of the section sets forth provisions for administrative hearings on threatened suspension, persons exempt from blood alcohol tests for medical reasons, and requests by vehicle operators for tests. The scope of the hearing includes the issue of whether the arrestee refused to submit to the test.

tion. They will construe the statute with a view to promoting rather than to defeating its general purpose and the policy behind it.' (*Id.*, p. 631.) Remedial statutes such as section 13353 'must be liberally construed to effect their objects and suppress the mischief at which they are directed. They should not be given a strained construction that might impair their remedial effect.' (*Id.*, pp. 681-682.) ''

''The purpose of section 13353 is to reduce the toll of death and injury resulting from the operation of motor vehicles on California highways by intoxicated persons. . . .

''The obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is 'deemed to have given his consent' is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates. With this exception, the chemical tests may be given to any person covered by the statute, even if he be 'dead, unconscious, or otherwise in a condition rendering him incapable of refusal.'

''Such tests do not violate one's right against self-incrimination (*Schmerber* v. *California*, 384 U.S. 757, 760-765 [16 L.Ed.2d 908, 913-916, 86 S.Ct. 1826]; *People* v. *Sudduth, supra,* 65 Cal.2d 543, 546-547 [55 Cal.Rptr. 393, 421 P.2d 401]; *United States* v. *Wade,* 388 U.S. 218, 221 [18 L.Ed.2d 1149, 1153, 87 S.Ct. 1926]), nor one's right to be free from unreasonable searches and seizures (*Schmerber* v. *California, supra,* pp. 766-772 [16 L.Ed.2d pp. 917-920]), nor one's right to counsel (*United States* v. *Wade, supra; People* v. *Sudduth, supra,* p. 546; see also *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]).'' (*Id.* pp. 925-926.)

''It is firmly established that a drunken driver has no *right* to resist or refuse such a test (See *Schmerber* v. *California supra,* 384 U.S. 757, 760-765 [16 L.Ed.2d 908, 913-916]; *People* v. *Sudduth, supra,* 65 Cal.2d 543, 546-547). It is simply because such a person has the *physical power* to make the test impractical, and dangerous to himself and those charged with administering it, that it is excused upon an indication of his unwillingness.'' (*Id.* pp. 927-928.)

In *Finley* v. *Orr,* 262 Cal.App.2d 656, 662 [69 Cal.Rptr. 137], the court states: ''In *People* v. *Bustos,* 247 Cal.App.2d 422, 424 [55 Cal.Rptr. 603], defendant asserted on appeal that the admission of evidence of a blood sample taken from him violated his privilege against self-incrimination. The court held (p. 424) that the decision in *Schmerber* v. *California* (*supra*) 'squarely negates defendant's assertion.' ''

In *Breithaupt* v. *Abram,* 352 U.S. 432, 439-440 [1 L.Ed.2d 448, 452-453, 77 S.Ct. 408], the court, in upholding a test

based on a sample of blood taken by a physician at the request of a police officer from the accused while the latter was unconscious, which was admitted in evidence, comments: "Modern community living requires modern scientific methods of crime detection lest the public go unprotected. The increasing slaughter on our highways, most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield. The States, through safety measures, modern scientific methods, and strict enforcement of traffic laws, are using all reasonable means to make automobile driving less dangerous.

"As against the right of an individual that his person be held inviolable, even against so slight an intrusion as is involved in applying a blood test of the kind to which millions of Americans submit as a matter of course nearly every day, must be set the interests of society in the scientific determination of intoxication, one of the great causes of the mortal hazards of the road. And the more so since the test likewise may establish innocence, thus affording protection against the treachery of judgment based on one or more of the senses. Furthermore, since our criminal law is to no small extent justified by the assumption of deterrence, the individual's right to immunity from such invasion of the body as is involved in a properly safeguarded blood test is far outweighed by the value of its deterrent effect due to public realization that the issue of driving while under the influence of alcohol can often by this method be taken out of the confusion of conflicting contentions."

The California Supreme Court in *People* v. *Sudduth,* 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401], a case in which evidence acquired from a breathalyzer test was admitted into evidence, states: "The value of such objective scientific data of intoxication to supplement the fallible observations by humans of behavior seemingly symptomatic of intoxication cannot be disputed. (*People* v. *Duroncelay* (1957) 48 Cal.2d 766, 772 [312 P.2d 690].) In a day when excessive loss of life and property is caused by inebriated drivers, an imperative need exists for a fair, efficient, and accurate system of detection, enforcement and, hence, prevention. (See *Breithaupt* v. *Abram* (1957) 352 U.S. 432, 439 [1 L.Ed.2d 448, 77 S.Ct. 408].)"

Driving an automobile is a privilege subject to the legislative power to regulate travel over the highways of the state for the general welfare. This privilege was considered in *Watson* v. *Division of Motor Vehicles,* 212 Cal. 279, 283 [298 P.

481], where the court states: "It may be exercised in any reasonable manner to conserve the safety of travelers and pedestrians. Since motor vehicles are instruments of potential danger, their registration and the licensing of their operators have been required from their first appearance. The right to operate them in public places is not a natural and unrestrained right, but a privilege subject to reasonable regulation, under the police power, in the interest of the public safety and welfare. [Citation.] The power to license imports the further power to withhold or to revoke such license upon noncompliance with prescribed conditions. In our opinion, the revocation of the privilege for nonpayment of judgments arising from negligent operation of motor vehicles is a reasonable regulation, and one which may well tend to eliminate from the highways persons shown to be dangerous to life and property. There is nothing arbitrary or unreasonable in such a requirement." (See also discussion 22 U. Miami L.Rev., No. 3 pp. 699-700.)

In *Zidell* v. *Bright*, 264 Cal.App.2d 867 [71 Cal.Rptr. 111], the court, in commenting on the purposes of Vehicle Code section 13353, states (at p. 870): "The immediate purpose of Vehicle Code section 13353, the implied consent statute, is to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated. The long-range purpose is, of course, to inhibit intoxicated persons from driving on the highways."

The cases cited hold the law of this state to be that a suspected drunken driver has no right to resist or refuse a test and, if the requirements established by Schmerber are met, the results of a blood test taken without a person's consent constitute admissible evidence in a prosecution for drunken driving. (Veh. Code, § 23101.)

We hold that Vehicle Code section 13353 complements rather than supersedes section 23101, and that the enactment of the implied consent law in no way affected the admissibility of blood alcohol tests under established case law. In *People* v. *Hanggi*, 265 Cal.App.2d Supp. 969, 975 [70 Cal. Rptr. 540], the defendant contended that inasmuch as he was not offered a choice of tests as provided for in Vehicle Code section 13353, the results of the blood examination were inadmissible in evidence in his trial. The court, in rejecting this contention, states (at p. 975): "We conclude that the subsequent adoption of Vehicle Code section 13353 (effective October, 1966) added nothing to the admissibility or inadmissibility of such evidence in a criminal prosecution for driving

under the influence of intoxicating liquor, and made no change insofar as the question of due process in a criminal prosecution is concerned."

Section 13353 has two separate objectives, namely: (1) to secure chemical tests for determining whether or not a person was intoxicated while driving a motor vehicle and to allow introduction of such evidence into court; and (2) to provide an administrative penalty for those drivers who refuse to comply. We think it is clear that the administrative penalty imposed upon a licensee who drives a motor vehicle while drunk upon the highways of this state is in addition to, and separate and apart from, the penalty imposed by said section 23101. Nowhere do we find any legislative indication that by the enactment of the implied consent law, the Legislature thereby intended to preclude the taking of blood samples as an incident to a lawful arrest over a person's refusal in the absence of force or violence.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.