UNITED STATES

v.

**Sergeant Barbara Y. BROWN, FR425–47–1325 United States Air Force.**

**ACM 30013.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 11 March 1992.

Decided 16 Dec. 1993.

Appellate Counsel for the Appellant: Colonel Terry J. Woodhouse, Lieutenant Colonel Frank J. Spinner, Major Mary C. Yastishock, and Captain Robert A. Parks.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Major John H. Kongable, and Captain Jane L. Harless.

Before HEIMBURG, YOUNG, and PEARSON, Appellate Military Judges.

OPINION OF THE COURT

HEIMBURG, Senior Judge:

The question presented by this case is whether medical personnel who treat a member of their unit must give Article 31(b), 10 U.S.C.A. § 831(b), advice [1] before asking questions if they suspect the medical condition resulted from an offense. Under the circumstances presented here, our answer is No.

## I. ISSUE

Appellant argues her admissions of drug use to Colonel H, a physician, and Captain C, a nurse, were unlawfully obtained in violation of Article 31(b), UCMJ. Appellant asserts Colonel H and Captain C were not questioning her "solely" to obtain information for diagnosis and treatment, but were "investigating" her drug abuse on behalf of the hospital administration. Therefore, she maintains, her admissions to those persons should have been excluded from evidence as the products of unwarned interrogations.

At trial, appellant moved to suppress the statements she made to Colonel H and Captain C. After taking evidence and making findings of fact, the military judge concluded the questions Colonel H and Captain C asked appellant were "for the purposes of medical diagnosis and treatment and not for investigative purposes." He concluded Article 31(b) did not apply to their questioning, and denied appellant's motion to suppress. Appellant then entered conditional pleas of guilty to Charge I, use of meperidine (Demerol),[2] a schedule II controlled substance, on divers occasions between 10

September 1990 and 4 April 1991,[3] preserving the issue on appeal.[4]

## II. FACTS

Sergeant Barbara Y. Brown was assigned as a medical technician in the surgical clinic at an Air Force medical center. When he came to work on 4 April 1991, her supervisor, Staff Sergeant C, noticed she was "visibly upset" and crying. She explained to him she and her husband had argued the night before. Later in the morning one of the physicians on the ward, Dr. V, told Sergeant C there seemed to be a problem with Sergeant Brown: she "appeared to be high as a kite." Although Sergeant C still observed nothing about her demeanor to confirm this report, he and Dr. V took Sergeant Brown into Dr. V's office and asked her whether she had taken any medications. She denied it, saying she was angry they would insinuate she had a drug problem. Again, Sergeant Brown blamed her condition on loss of sleep and the emotional effects of arguing all night with her husband.

After lunch, Sergeant C asked Sergeant Brown to help him hold a young patient while he removed sutures from the patient's ear. Sergeant C observed Sergeant Brown seemed unable to concentrate "more than a couple of seconds" at a time, was upset and crying and kept letting go of the patient's head and picking up a soda cup she brought from lunch. Sergeant C turned the patient over to another person and reported his observations to Dr. V. Together, Sergeant C and Dr. V took Sergeant Brown outside the medical center to

1. Article 31(b), UCMJ, 10 U.S.C. § 831(b); Mil. R.Evid. 305.

2. Demerol hydrochloride, a brand of meperidine hydrochloride, is a narcotic analgesic often used for pain relief and sedation. Its actions are similar to those of morphine. PHYSICIANS' DESK REFERENCE, 2047–48 (46th ed. 1992).

3. Violation of Article 112a, UCMJ; MCM, Part IV, paragraph 37. She also pled guilty, unconditionally, to Charge II, theft of Demerol and Valium (a schedule IV controlled substance) from the medical center, and the Additional Charge, wrongful possession of Versed (a sched-

ule IV controlled substance) in violation of Articles 121 and 112a, UCMJ; MCM, Part IV, paragraphs 46 and 37.

4. We observe, once more, a conditional plea which does not follow the rules. It was neither reduced to writing, as required by R.C.M. 910(a)(2), nor was the preserved issue case-dispositive. *See United States v. Pond*, 36 M.J. 1050, 1060 (A.F.C.M.R.1993); *United States v. Felix*, 36 M.J. 903, 905 n. 1 (A.F.C.M.R.1993); *United States v. McLaren*, 34 M.J. 926, 927 n. 1 (A.F.C.M.R.1992); *United States v. Phillips*, 32 M.J. 955 (A.F.C.M.R.1991).

talk. In response to questioning, Sergeant Brown continued to deny drug use, but Sergeant C noted her speech was "a little slurry" and she staggered somewhat. She was "chain-smoking" and continually dropped cigarettes. Sergeant Brown did seem responsive to all questions.

At about 1600, Dr. V and Sergeant C brought Sergeant Brown back into the medical center. She was still staggering. They told her they wanted her to go to the emergency room. She was reluctant, but they told her if she didn't go voluntarily they would make her go. She was taken in a wheelchair.

The acting medical center commander, Colonel M, was notified of Sergeant Brown's condition. He went to the emergency room, observed staff working with her, and decided to assign Colonel H, head of the psychiatry department, to care for Sergeant Brown. Colonel M told Colonel H of appellant's unusual behavior, the suspicion that she was under the influence of drugs, and that there was an ongoing internal investigation into theft and use of Demerol. Colonel M talked with Colonel H about whether appellant should be advised of her Article 31 rights, and Colonel H told Colonel M if it were done, Colonel M ought to do it. Colonel H stated it wasn't his position to advise her of her rights, and he "didn't really want to be caught in the conflict of being her attending physician on the one hand and being an investigative authority on the other."

Colonel H admitted appellant to the psychiatric ward. He did not advise appellant of her Article 31 rights. Colonel H and Captain C, a nurse on the ward, both observed appellant showed symptoms of intoxication and asked appellant what drugs she had taken and how much. Both testified that they believed appellant had taken a drug overdose, and needed to know what drugs appellant had taken in order to render proper care during withdrawal. Colonel H testified that once appellant told him she was using intravenous Demerol he

needed to know the quantity, because medical literature indicates Demerol withdrawal reactions are severe and some patients die during withdrawal. Both Colonel H and Captain C testified that they asked appellant only questions they viewed as medically necessary for her treatment during withdrawal. Appellant's admissions to them of use of Demerol formed the factual basis for Charge I.

## III.   LAW AND STANDARD OF REVIEW

■ Article 31(b), UCMJ, prohibits questioning of military suspects without first informing them of the nature of the accusation and advising them that they do not have to make a statement, but any statement they make may be used in evidence against them in a trial by court-martial. The purpose of this provision is to "avoid impairment of the constitutional guarantee against compulsory self incrimination." *United States v. Gibson*, 3 U.S.C.M.A. 746, 14 C.M.R. 164, 170 (1954).

■ Not all questioning by persons subject to the UCMJ requires Article 31(b) warning. There is no requirement for an Article 31 warning by military physicians who ask questions for diagnostic purposes. *United States v. Fisher*, 21 U.S.C.M.A. 223, 44 C.M.R. 277 (1972); *United States v. Malumphy*, 12 U.S.C.M.A. 639, 31 C.M.R. 225 (1962); *United States v. Baker*, 11 U.S.C.M.A. 313, 29 C.M.R. 129 (1960). This exception has been extended to a psychiatric nurse, *United States v. Moore*, 32 M.J. 56 (C.M.A.1991), and to a psychiatric social worker, *United States v. Raymond*, 38 M.J. 136 (C.M.A.1993).

■ We will consider *de novo* whether an Article 31(b), UCMJ, or *Miranda*[5] rights warning was required when appellant was questioned by Colonel H and Captain C. *Cf. United States v. Collier*, 36 M.J. 501, 504 (A.F.C.M.R.1992).

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967) (applied *Miranda* advice requirement to military); Mil.R.Evid. 305.

## IV. DISCUSSION

Our review of military precedents above seems to preclude success for appellant's claim that her treating physician and ward nurse were required to give Article 31(b) warnings before asking about her drug abuse. Appellant argues, however, that her situation was different, in that she was both a patient and a staff member who was under investigation for potential drug theft and drug abuse.

She points out both Colonel H and Captain C knew the acting commander was concerned about theft of drugs and her drug use. Both persons, she argues, suspected her of an offense against the UCMJ before they asked questions. Because of their knowledge of Colonel M's interest in her case, she asserts, both were tainted by command interest. Thus, their questions of her were not "solely" motivated by diagnostic concerns, but *presumptively* also for the purpose of assisting the medical center commander to perfect a case against her. *Cf. United States v. Loukas*, 29 M.J. 385, 389 n. * (C.M.A.1990).

We observe that appellant was arguably in custody when she made admissions of drug use to Colonel H and Captain C. She opposed inpatient admission to the medical center, and repeatedly said she wanted "out of here" anytime she was offered the opportunity to express herself. She was placed in the mental health ward, from which there was but one available exit, under 24–hour observation as a precaution against suicide. Nevertheless, appellant's custodial status was not litigated at trial, and we do not need to decide it, for if Article 31(b) warnings were not required, neither were *Miranda* warnings. *Collier*, 36 M.J. at 506.

The military judge concluded Colonel H asked appellant questions "for the purposes of medical diagnosis and treatment, and not for investigative purposes." There is ample support in the record for this finding, and we adopt it. *United States v. Davis*, 36 M.J. 337, 341 (C.M.A.1993), *United States v. Middleton*, 10 M.J. 123, 133 (C.M.A.1981). The evidence supports a fur-

ther finding, which we make, that Colonel H deliberately went to some efforts to preclude appellant from unnecessarily incriminating herself beyond supplying the information he needed to care for her. He stopped her explanations of drug abuse at one point with a warning that anything she told him could be used in court, and, because of her condition, he refused to allow Air Force Office of Special Investigations agents to question her the evening of 4 April 1991. Colonel H testified he asked no questions except for medical purposes, and we believe him. The unwarned admissions appellant made to Colonel H are admissible.

The military judge concluded Captain C asked appellant questions for the same purposes as Colonel H. Again, there is ample support in the record for this finding, and we adopt it. Captain C testified she didn't even think about a criminal investigation because she had no idea appellant's situation would be that serious. Her questions about the type and amount of drugs appellant used were asked in an effort to obtain appellant's physical history, "just like a medical exam." Neither Article 31 nor *Miranda* warnings were required for Captain C's questioning.

## V. PHYSICIAN–PATIENT PRIVILEGE

Appellant, acknowledging there is no physician-patient privilege in military law,[6] asks this Court to create a special physician-patient privilege rule to cover her situation "as an intoxicated, unwilling patient of the military medical system." That is outside our authority. Congress has entrusted to the President the power to adopt rules of evidence, including privilege. Article 36(a), UCMJ, 10 U.S.C. § 836(a) (1988). This Court is unable to create such a rule, even assuming we thought it desirable.

## VI. CONCLUSION

We conclude the findings and the sentence are correct in law and fact, the sen-

---

6. Mil.R.Evid. 501(d).

tence is appropriate, and no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Judges YOUNG and PEARSON concur.